Argued and submitted May 15, 1992, reversed and remanded September 22, 1993

In the Matter of the Compensation of
Robert Proctor, Claimant.

Robert PROCTOR,
*Petitioner,*

*v.*

SAIF CORPORATION
and Adult and Family Services Division,
*Respondents.*

(90-04089; CA A70294)

860 P2d 828

Eileen G. Simpson, Eugene, argued the cause for petitioner. With her on the brief was Peter O. Hansen, Portland.

Michael Whitty, Special Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Chief Judge, and Deits and Durham, Judges.

DURHAM, J.

## DURHAM, J.

Claimant seeks review of a Workers' Compensation Board order denying the compensability of his claim. The issues are whether he was a traveling employee and whether he was on a distinct departure on a personal errand at the time of injury. We review for errors of law, ORS 656.298(6); ORS 183.482(7), (8), and reverse and remand.

We take the facts from the Board's findings. Employer organized a conference in Corbett to teach its employees about alcohol and drug abuse so that they could better serve employer's clients. Attendance was optional, but it was a factor that employer considered in job evaluation. Employer compensated the employees for attending the seminar. Conference sessions were scheduled from 8:30 a.m to 8:30 p.m. on January 23 and 24, 1990, and from 8:30 a.m. to 2:30 p.m. on January 25, 1990. Employer furnished meals before and after the sessions. Employer did not require employees to sleep and eat at the conference site, but encouraged them to stay at its expense because of the intensity of the program. Claimant, who lived 22 miles from Corbett, agreed to sleep and eat at the conference site.

The first 12-hour session was fatiguing. Employer encouraged, but did not require, participants to engage in some physical activity to relieve the stress, although it organized no recreational activities at the site. It also encouraged employees to see the beautiful sights off the grounds. Employees did not need permission to leave the conference site. Claimant tried to use the pool table and the ping-pong table, but they were occupied by others, and it was too dark to explore the conference center's walking trails. He wanted some physical activity, so he drove 15 miles to an athletic club, where he was a member, with the intention of working out and returning to the conference center. He ruptured an Achilles tendon while playing basketball. He obtained medical treatment and returned to his home in Portland. He went back to the conference the next day but was in too much pain to stay for the entire session. He did not attend the third day. Claimant filed a claim for his Achilles tendon injury.

The referee set aside SAIF's denial of the claim. He found that claimant was a traveling employee and that his

trip to the club was not a distinct departure on a personal errand. The Board accepted the referee's findings, but held that the injury was not compensable:

> "We conclude that the 'traveling employee rule' is not applicable to the type of 'business' trip at issue here, where attendance at the seminar is voluntary and the employee is not required to stay the night. Moreover, assuming the rule was applicable, we would conclude that the basketball activity at the Cascade Athletic Club was a distinct departure on a personal mission."

The Board, instead, analyzed claimant's activity under the seven factors identified in *Mellis v. McEwen, Hanna, Gisvold*, 74 Or App 571, 573, 703 P2d 255, *rev den* 300 Or 249 (1985), for determining whether an injury is work related and held that the injury was not connected to work. The Board held that the trip to the conference center was within the course and scope of employment, but that the trip to the club to play basketball took claimant out of the course and scope.

■ On review, claimant challenges the Board's compensability determination, contending that he was a traveling employee and was not on a distinct departure on a personal errand. We agree that the Board's analysis is flawed. The Supreme Court in *SAIF v. Reel*, 303 Or 210, 216, 735 P2d 364 (1987), held that where travel is a part of employment, risks incident to travel are covered by the workers' compensation law even though the employee may not be working at the time of injury:

> "The risk inherent in travel may arise out of the employment where such travel is a necessary incident of the employment. That is, when the travel is essentially part of the employment, the risk remains an incident to the employment even though the employe may not actually be working at the time of the injury."

As we noted in *PP&L v. Jacobson*, 121 Or App 260, 262, 854 P2d 999 (1993), the rule governing the compensability of injuries to traveling employees is stated in 1A Larson, *Workmen's Compensation Law* 5-275, § 25.00 (1990):

> " 'Employees whose work entails travel away from the employer's premises are held in the majority of jurisdictions to be within the course of their employment continuously during the trip, except when a distinct departure on a

personal errand is shown. Thus, injuries arising out of the necessity of sleeping in hotels or eating in restaurants away from home are usually held compensable.' "

■ ■ The Board erred in holding that, although the trip to the conference was related to employment, the traveling employee rule is inapplicable because attendance was voluntary and claimant was not required to stay overnight. The rule does apply to employees who volunteer for work that entails travel. The issue is whether travel is purely a personal choice or preference and is, therefore, a self-created risk, or is an activity that accommodates or benefits the employer's business. The conference was an intensive course designed to improve employer's ability to serve its clients. Claimant's attendance was compensated and was a factor in his job evaluation. His travel to the conference accommodated employer's business purpose and was not a purely personal choice. His willingness to attend does not obviate the need to apply the rule.

■ The Board's second reason—that claimant was not required to stay overnight—was rejected in *PP&L v. Jacobson, supra*, 121 Or App at 262. In that case, we modified our prior conclusion that "the traveling employee rule is limited to employees who travel overnight," 121 Or App at 262, and applied the rule to a worker who was injured during his lunch hour while traveling for the employer's benefit. The rule's applicability does not depend on overnight travel. We conclude that, on the basis of the Board's findings, the traveling employee rule applies to claimant's travel to the conference.

A traveling employee is continuously within the course and scope of employment while away from home, except when engaged in a distinct departure on a personal errand. *Slaughter v. SAIF*, 60 Or App 610, 613, 654 P2d 1123 (1982). Whether a traveling employee's injury occurs on a distinct departure on a personal errand depends on whether the activity that results in injury is reasonably related to the travel status.[1] The Board

---

[1] In *Slaughter v. SAIF, supra*, 60 Or App at 616, we said:

"We believe that the general rule of continuous coverage in *Simons[v. SWF Plywood Co.*, 26 Or App 137, 143, 552 P2d 268 (1976),] is best understood as a statement that injuries are compensable when resulting from activities reasonably related to the claimant's travel status."

We also said:

concluded, apparently as an alternative basis for its result, that claimant was on a distinct departure.

The Board construed the distinct departure on a personal errand exception too broadly. It reasoned that employer did not approve travel to the club and did not direct, encourage or acquiesce in the basketball activity. It noted that the seminar did not generate stress that required the specific activity of a basketball game at the club, and that claimant's job was not related to the club or the basketball game. It also noted that claimant had to leave the seminar site to get to the club, that the club was a five-minute trip from claimant's residence, and that he used the club for recreation, as he had on prior occasions.

Those statements do not describe a distinct departure on a personal errand. Employer need not approve a traveling employee's travel to or participation in an afterwork relaxation activity. A traveling employee may satisfy a physical need for recreation even if the job does not cause stress, and even if the employee chooses an activity that is not related to work. As the cases show, most traveling employees relax through activities that have little relationship to work. In *Slaughter v. SAIF, supra*, we held that a long haul truck driver did not engage in a distinct departure on a personal errand when he chose to pass the time between trips by drinking in a local tavern, and was injured in a fight with other tavern customers. *Slaughter* distinguished *Hackney v. Tillamook Growers Coop.*, 39 Or App 655, 593 P2d 1195, *rev den* 286 Or 449 (1979), where we found that a traveling employee driver engaged in a distinct departure on a personal errand by disregarding a dispatcher's instructions to leave

---

"Other jurisdictions have explained the limits on coverage for traveling employes in terms of reasonableness of the activity. One court states:

" 'Where an employe, as part of his duties, is directed to remain in a particular place or locality until directed otherwise or for a specified length of time, "the rule applied is simply that the employe is not expected to wait immobile, but may indulge in any *reasonable* activity at that place, and if he does so the risk inherent in such activity is an incident of his employment.

" '* * * [T]he test as to whether specific activities are considered to be within the scope of employment or purely personal activities is the reasonableness of such activities. Such an employe may satisfy physical needs including relaxation.' *Robards v. New York Div. Electric Products, Inc.*, 33 App Div 2d 1067, 307 NYS 2d 599, 600-01 (1970)." 60 Or App at 615. (Emphasis in original.)

Florida and drive to South Carolina, and, instead, remained for 5-1/2 hours in a motel bar, drinking and watching television. He broke his arm while arm wrestling. We said:

> "*Hackney* is not controlling, because a 'personal errand' was found there, in large part because of Hackney's delay in leaving Florida. *See Hackney v. Tillamook Growers Coop., supra*, 39 Or App at 658-59. The perceived disregard of the dispatch direction made the personal errand 'distinct.' " *Slaughter v. SAIF, supra*, 60 Or App at 614.

In *Rogers v. SAIF*, 289 Or 633, 616 P2d 485 (1980), the court found that a traveling employee's death in a bar following drinking and horseplay was work related because he was under stress, worked extended hours, had limited recreational and social choices open to him due to travel status and engaged in some supervisory activities on the night he died.

Those cases looked beyond the claimant's presence in a bar to find whether the claimant's presence or activity in the bar had a work connection, and whether the activity violated employer directives or was

> " 'so inconsistent with the purpose of his trip * * * as to constitute an abandonment of his employment or such a deviation therefrom as should have caused us to conclude that he was no longer in the course of his employment.' *Schreckengost v. Workmen's Comp. Appeal Bd.*, [43 Pa Cmwlth Ct 587, 403 A2d 165, 167 (1979)]." *Slaughter v. SAIF, supra*, 60 Or App at 615 n 4.

The order states no facts that could support a conclusion that claimant's activity was inconsistent with the business trip's purpose or the employer's directives. The order does not demonstrate how the club's proximity to claimant's residence is relevant to the determination of whether the basketball activity is reasonably related to his traveling employee status. The fact that claimant had used the club for recreation on prior occasions does not show a distinct departure. A traveling employee can seek relief from the stress of a 12-hour workday by attending a recreation facility through which the employee has obtained such relief in the past.

On the facts found by the Board, a correct interpretation of the "distinct departure on a personal errand" exception requires us to reverse. ORS 183.482(8)(a)(A). Claimant played basketball to exercise his body and relieve stress

created by the 12-hour seminar that day. Employer encouraged the employees to relieve stress with physical activity so that they would be better able to learn from and participate in the conference. It did not confine the employees to a particular activity or place. Claimant violated no employer directive in going to the club to play basketball. He chose to make that trip because he had little or no opportunity to engage in recreation at the conference site. Neither his manner of playing basketball nor conditions at the club created any unusual risk of injury.[2] The distance traveled by a traveling employee to obtain recreation may show a distinct departure, such as where the trip violates work requirements or lawful employer directives, or contradicts the asserted recreation objective, but the findings do not support such a conclusion here.

The Board's incorrect interpretation of the "distinct departure on a personal errand" exception is an error of law.

Reversed and remanded.

---

[2] Few would disagree with our view that a pick-up basketball game is more relaxing, healthier and less likely to result in injury than the drinking and fighting that we held in *Slaughter v. SAIF, supra,* were not a distinct departure on a personal errand.