Argued and submitted December 13, 1994, affirmed May 17, 1995

In the Matter of the Compensation of
Elva McBride, Claimant.

SAVIN CORPORATION,
*Petitioner,*

*v.*

Elva McBRIDE,
*Respondent.*

(92-12747; CA A83356)

894 P2d 1261

Darren L. Otto argued the cause for petitioner. With him on the brief was Scheminske & Lyons.

Steven D. Bryant argued the cause for respondent. With him on the brief was Bryant, Emerson, Fitch & McCord.

Before Deits, Presiding Judge, and Riggs and Haselton, Judges.

DEITS, P. J.

## DEITS, P. J.

Employer seeks review of a Workers' Compensation Board order setting aside its denial of compensability of claimant's low back condition. The issue is whether claimant, a traveling employee, was on a distinct departure from her employment at the time that she was injured in a motor vehicle accident. We affirm.

Claimant worked for employer as a field engineer. Her job duties involved repair and preventive maintenance on copy machines. Claimant worked throughout central Oregon. She lived in Bend and received her job assignments by contacting employer's Portland office by telephone. She was dispatched by the Portland office to specific job sites. Her normal work hours were 8:00 a.m. to 4:30 p.m., Monday through Friday. She was considered "clocked out" following the last call of the day. Claimant used her own car to get to her work assignments and was paid a car allowance of $200 per month and mileage at nine cents per mile, with 30 miles each day excluded.

On June 10, 1992, claimant was performing her normal duties as a field engineer. She completed an assignment in LaPine at about 3:30 p.m. She then contacted her employer and was dispatched to repair a copier at a location in Redmond. Claimant went to the job site in Redmond, but was unable to do the work because the customer was not there. She called employer and was told that the work order had been canceled and that she was released for the day. Rather than return directly to her home in Bend, however, claimant decided to stop at a nearby bank to obtain a form that she needed for a court matter in which she was involved. As the Board found, she

> "went to a bank located at Sixth and Cascade Streets, in Redmond, Oregon, to conduct some personal business, a diversion of three to five blocks from the route on which she would return to Bend, Oregon. The bank business took some five minutes."

Claimant then returned to her car and began driving back to her home in Bend. As she drove through Redmond, she was hit by another car from behind and was injured. The accident took place a few blocks before she returned to the

route that she would have used to return home if she had not gone to the bank. Claimant filed a workers' compensation claim with employer, which was denied on the basis that claimant was not in the course and scope of her employment when the accident occurred. The Board concluded that the claim was compensable and set aside employer's denial.

■     For an injury to be compensable under Oregon's workers' compensation law, it must "arise out of" and be "in the course of" employment. ORS 656.005(7)(a). As explained in *Norpac Foods, Inc. v. Gilmore*, 318 Or 363, 366, 867 P2d 1373 (1994), we use a unitary work-connection test in which the "arising out of" and "in the course of" elements are both part of a single inquiry, which is whether the relationship between the injury and the work is sufficient to make the injury compensable.

■     The Board concluded here that claimant was a traveling employee. We have held that a person who has the status of a traveling employee is continuously within the course and scope of employment while traveling, except when it is shown that the person has "engaged in a distinct departure on a personal errand." *Proctor v. SAIF*, 123 Or App 326, 330, 860 P2d 828 (1993); *see also Slaughter v. SAIF*, 60 Or App 610, 654 P2d 1123 (1982). In most instances, we have used Larson's explanation of this principle:

> "Employees whose work entails travel away from the employer's premises are held in the majority of jurisdictions to be within the course of their employment continuously during the trip, except when a distinct departure on a personal errand is shown. Thus, injuries arising out of the necessity of sleeping in hotels or eating in restaurants away from home are usually held compensable." Arthur Larson, 1A *Workmen's Compensation Law* § 25.00, 5-275 (1990) (quoted in *Proctor*, 123 Or App at 329; *PP&L v. Jacobson*, 121 Or App 260, 262, 854 P2d 999 (1993); *Slaughter*, 60 Or App at 613).

Thus, when travel is part of the employment, "the risk of injury during activities necessitated by travel remains an incident to the employment," even though the employee may not actually be working when the injury occurs. *Jacobson*, 121 Or App at 263 (citing *SAIF v. Reel*, 303 Or 210, 216, 735 P2d 364 (1987)).

■ The parties agree that claimant was a traveling employee and that her stop at the bank was a personal errand. However, employer argues that claimant's personal errand was a "distinct departure" and that the Board erred in concluding otherwise. In determining whether a traveling employee's injury is compensable, we consider whether the activity that resulted in the injury was reasonably related to the employee's travel status. *Proctor*, 123 Or App at 330; *Slaughter*, 60 Or App at 616.

In holding that claimant's injury was compensable, the Board explained that

> "claimant had traveled to Redmond on a work assignment, when she learned that the work order had been canceled and she was released for the rest of the day. Claimant stopped at a bank before traveling homeward to Bend, because she believed the banks in Bend would have been closed if she had driven home first. Thus, claimant's bank errand was for her personal convenience. There is no contention that claimant's belief or conduct was unreasonable, or that she disobeyed the employer in going to the Redmond bank. Under these circumstances, we conclude that claimant's personal bank errand in Redmond was reasonably related to her work status as a traveling employee."

The Board also found, and employer does not challenge the finding, that claimant's errand to the bank took her only "a few blocks from her normal route home" and the bank business took "some five minutes."

■ We agree with the Board's conclusion that claimant's personal errand was not so unrelated to her travels as to be excluded from the broad scope of coverage for traveling employees. *See Slaughter*, 60 Or App at 616 (holding that not all activities are covered under the general rule of continuous coverage). The Board's uncontested findings establish that claimant traveled to Redmond at the direction of employer to perform a work assignment. The use of her personal car to travel between her job assignments and her home was approved of and contemplated by employer. Her errand at the Redmond bank was necessitated by travel because she reasonably believed that the Bend branch, to which she would normally go, would have closed before she could get there.

■      In addition, and despite employer's contention to the contrary, substantial evidence supports the Board's finding that claimant's trip to the bank was not in violation of employer's directives. *Cf. Hackney v. Tillamook Growers*, 39 Or App 655, 658-59, 593 P2d 1195 (1979) (the claimant's disregard of the employer's direction made the personal errand "distinct"). Although claimant's personal errand was a "departure" from her business, that departure was minimal in terms of both time and space. Such a departure is so transitory and slight as to be disregarded as insubstantial. *Cf.* Larson, 1 *Workmen's Compensation Law* § 19.00.[1]

We conclude that the Board did not err in holding that, under these facts, claimant's trip to the bank was not a distinct departure. The Board did not err in setting aside employer's denial of compensability.[2]

Affirmed.

---

[1] Our inquiry into whether a traveling employee has made a "distinct departure" for a personal errand is analogous to the analysis of whether an employee who is off work premises makes an identifiable deviation from the business trip or errand for personal reasons. *See, e.g., Underwood v. Pendleton Grain Growers*, 112 Or App 170, 827 P2d 948 (1992) (claimant was asked to fulfill business obligations on his way home from work, but four-hour deviation to drink beer and play pool removed him from the course of employment). In a discussion of deviations that take an employee out of the course of employment, Larson has observed that some deviations for personal reasons are so minor as to be insignificant:

"[T]he courts now generally recognize that human beings do not run on tracks like trolley cars, and therefore uphold awards in situations like the following: getting cigarettes during a trip to or from work in the employer's conveyance; running across the street in the course of a delivery trip to buy a little food; driving one's daughter to school, dropping one's wife off at church, leaving a message with one's sister about working late, picking up mail for vacationing friends, crossing the street during a beer break to retrieve one's lunch, stopping at one's home to get a raincoat and leave some meat; crossing the road during a delivery trip to have a glass of beer at 2:00 in the afternoon; or to get a newspaper; making a personal phone call; looking for a ring; picking up two young ladies and taking them home while driving a car to test its brakes; buying a toy during spare time to take home to a child; and even picking cherries from a customer's cherry tree." Larson, 1 *Workmen's Compensation Law* § 19.63 at 4-434 (footnotes omitted).

[2] Because we conclude that claimant's personal errand to the bank was not a distinct departure, we need not address employer's second assignment of error regarding the Board's findings as to when the departure was completed.